CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
CLARK HILL PLLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:   (702) 862-8300
Facsimile:    (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com

*[Proposed] Counsel for Debtor in Possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CREDIT MANAGEMENT ASSOCIATION, INC. | Case No. BK-18-16487-MKN<br>Chapter 11<br><br>**EMERGENCY MOTION (I) FOR CONTINUED USE OF CASH MANAGEMENT SYSTEM; (II) TO RETAIN PREPETITION BANK ACCOUNTS; (III) TO RETAIN PREPETITION AGENCY ACCOUNTS; (IV) FOR CONTINUED USE BUSINESS FORMS; AND (V) TO WAIVE COMPLIANCE WITH SECTION 345(B)**<br><br>Hearing Date: OST Pending<br>Hearing Time: OST Pending |

Credit Management Association, Inc., a California corporation, as debtor and debtor in possession (the "Debtor"), through its counsel the law firm of Clark Hill PLLC, hereby moves the Court for entry of an order (1) authorizing the continued use of Debtor's (i) existing cash management system, (ii) prepetition bank accounts, (iii) prepetition agency accounts, and (iv) business forms; and (2) waiving compliance with the investment and deposit requirements of section 345(b) of the Bankruptcy Code (the "Motion").

The Motion is brought pursuant to 11 U.S.C. §§ 105, 345 and 363, and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 6003 and 6004.  The Motion is made and based

on the points and authorities set forth below, the *Omnibus Declaration of Kimberly Lamberty in Support of Debtor's First Day Motions* (the "Lamberty Declaration"), the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any arguments of counsel entertained by the Court at the time of the hearing on the Motion.

Respectfully submitted this 31st day of October, 2018.

CLARK HILL PLLC

_____
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169

*[Proposed] Counsel for Debtor in Possession*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Local Rule 9014.2, the Debtor consents to the entry of a final order by the Bankruptcy Judge on the Motion.

### II.

### RELIEF REQUESTED

3. By this Motion, pursuant to sections 345, 363 and 364 of the Bankruptcy Code, the Debtor respectfully requests authority to continue to use the Debtor's existing cash management system, prepetition bank accounts, agency accounts, and business forms, along with a waiver of investment and deposit requirements under the Bankruptcy Code.

## III.

## RELEVANT FACTS

4. On October 31, 2018 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing its bankruptcy case (the "Chapter 11 Case"). Debtor is authorized to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No official committee of unsecured creditors has been formed, and no trustee has been appointed. The Debtor is operating its business, managing its financial affairs, and administering its estate as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the chapter 11 filing is contained in the Lamberty Declaration.

7. Debtor maintains the following bank accounts relating to its own funds (the "Bank Accounts"):

| Name | Account Number | Purpose |
|---|---|---|
| Union Bank<br>450 S. Figueroa Street<br>Los Angeles, CA  90071 | ######0930 | General Operations – Checking Account |
| Bank of America, N.A.<br>P.O. Box 25118<br>Tampa, FL  33622-5118 | ########1114 | General Operations – Credit Card Collections |

8. In addition, Debtor holds funds as an agent in a number of matters. Primarily, but not exclusively, these are matters in which Debtor serves as an assignee for the benefit of creditors, and, in that capacity, holds funds in segregated accounts as listed on Exhibit 2 (the "Agency Accounts") attached to the Lamberty Declaration. In each instance, Debtor does not have a legal interest in the funds held, except and until fees and expenses are owing to Debtor on account of its work performed.

9. The administrative burden of moving or transferring these Agency Accounts would be significant and, since the funds are segregated from funds belonging to the Debtor, it is submitted that changes to the Agency Accounts are not required by Debtor's bankruptcy filing.

10. To manage its business efficiently and seamlessly, the Debtor utilizes a cash management system (the "Cash Management System") to collect and transfer funds generated by its operations and disburse those funds to satisfy the obligations required to operate its business. The Cash Management System facilitates Debtor's cash monitoring, forecasting, and reporting. In connection with the Cash Management System, the Debtor proposes to retain control over the administration of its existing bank accounts.

11. In the ordinary course of business prior to the Petition Date, the Debtor used the Cash Management System to collect, transfer, and distribute funds generated by Debtor's business operations efficiently. In the ordinary course of business, the Debtor accurately recorded such collections, transfers, and disbursements as they were made.

12. Generally, Debtor utilizes two accounts in connection with its Cash Management System as follows: an Operating Account with Union Bank which is used for operations, including payroll and for payroll tax associated disbursements; and an Account with Bank of America which, as discussed below, is utilized for credit card collections, with excess funds transferred to the Union Bank Operating Account.

13. A portion of Debtor's customers use credit cards to make payments, and the Bank of America Account is used by the Debtor to process payments made through credit card companies. Debtor has been advised that it would take a substantial amount of time to obtain a new merchant account. Hence, if Debtor is not permitted to continue to use the merchant account as debtor-in-possession, it could not offer its customers the service of allowing them to pay their fees by credit card for whatever period of time it would take for Debtor to obtain new a merchant account. The absence of credit card services even for a short period of time would materially and adversely affect Debtor's business. As of the Petition Date, customer drafts relating to such credit cards were in various stages of collection. To obviate the disruption that might otherwise occur in the collection process, it is in the best interest of the estate to be

authorized to continue to its ordinary course credit card transactions, rather than to close this account and then open a new account.

14.     Given the utility of the existing Cash Management System, and the confusion and inefficiency that would be caused by trying to change it, Debtor requests approval to continue its prepetition cash management practices in the post-petition period. Debtor's Cash Management System constitutes ordinary course, essential business practices providing significant benefits to Debtor including, inter alia, the ability to (i) continue to make timely payroll and vendor disbursements; (ii) continue collections on its credit card receipts; and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. Any disruption of the Cash Management System could have an adverse impact upon Debtor's value.  Debtor will ensure that no prepetition outstanding checks (other than approved employee and payroll related payments or otherwise approved by this court) are honored, and will mark post-petition checks with the designation "Debtor in Possession."

15.     Debtor will maintain its books and records relating to the Cash Management System to the same extent the books and records were maintained before the Petition Date. As a result, the Debtor will be able to accurately document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest. Based on the foregoing, Debtor believes that maintenance of the existing Cash Management System is in the best interests of its estate and all parties in interest. Therefore, Debtor seeks authority to maintain and use its Cash Management System during its Chapter 11 Case.

## IV.

## LEGAL AUTHORITY

A.     **Cash Management System.**

Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary course transactions required to operate

its business without unneeded oversight by their creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Enron Corp.*, No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to its Cash Management System described above.

Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

The Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the

Cash Management System is vital to the efficient and economic administration of Debtor's Chapter 11 Case. Therefore, it is within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System. These procedures are similar to those employed by comparable corporate enterprises. Moreover, the relief requested herein is routinely granted in other chapter 11 cases. Similar authorization is appropriate in this Chapter 11 Case.

**B.    The Need to Honor Prepetition Obligations Related to the Cash Management System.**

In connection with its use of the Cash Management System, Debtor incurs periodic service charges and other fees to the Banks for the maintenance of the Cash Management System (the "Service Charges"). Debtor is unaware of any unpaid prepetition Service Charges as of the Petition Date. However, out of abundance of caution, Debtor hereby requests authority to pay the prepetition Service Charges, if any, that remain unpaid as of the Petition Date. Payment of the prepetition Services Charges is in the best interests of Debtor, its estate and all parties in interest as it will prevent any disruption to the Cash Management System. Because the Banks have setoff rights with respect to the Service Charges, payment of any prepetition Service Charges would not affect unsecured creditors and the issue of paying any prepetition Service Charges would just be a matter of timing.

Accordingly, by this Motion, Debtor seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003 and 6004 to pay, at Debtor's sole discretion, the prepetition Service Charges, if any. Based on the foregoing, Bankruptcy Rule 6003 has been satisfied. Furthermore, Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**C.    The Prepetition Bank Accounts.**

As part of the Cash Management System, Debtor maintains two Bank Accounts with the Debtor's own funds. Debtor routinely deposits and withdraws funds from the Bank Accounts by checks, wire transfers, and automated clearinghouse transfers. Rigid adherence to the U.S.

Trustee's "Operating Guidelines and Reporting Requirements For Debtors in Possession and Trustees" (the "Guidelines") would require, as of the Petition Date, the closure of Debtor's prepetition bank accounts, the opening of new accounts, and the immediate printing of new checks with a "Debtor in Possession" designation on them. Debtor believes, however, that its transition to chapter 11 will be smoother, less costly, and more orderly, and disruption and harm to its Cash Management System will be minimized, if the Bank Accounts are continued following the commencement of this case with the same account numbers; provided, however, that checks issued or dated prior to the Petition Date will not be honored absent a prior order of the Court, and Debtor will print a stamp "Debtor in Possession" on all checks issued post-petition.

Unless otherwise ordered by this Court, no Bank shall honor or pay any check issued on account of a prepetition claim. The Banks may honor any checks issued on account of prepetition claims only where this Court has specifically authorized such checks to be honored. Furthermore, notwithstanding anything to the contrary in any other emergency and interim order or other order of this Court, Debtor requests the Banks be authorized to accept and honor all representations from Debtor as to which checks should be honored or dishonored consistent with any order(s) of this Court, whether or not the checks are dated prior to, on, or subsequent to the Petition Date. The Banks shall not be liable to any party for following Debtor's instructions or representations regarding which checks should be honored or for implementing the automatic transfer of funds between its Bank Accounts.

By preserving business continuity and avoiding disruption and delay to Debtor's disbursement obligations, including payroll, that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including employees, vendors, and customers, will be best-served. The confusion that would otherwise result, absent the relief requested herein, would ill-serve Debtor's rehabilitative efforts.

. . .

. . .

8

**EMERGENCY MOTION FOR CONTINUED USE OF
CASH MANAGEMENT SYSTEM, ET AL.**

**D.      The Agency And Collections Accounts.**

In addition, and as discussed above, as part of its business operations the Debtor holds funds as an agent in a number of matters, primarily but not exclusively, matters in which Debtor serves as an assignee for the benefit of creditors. In that capacity, Debtor holds funds in the segregated Agency and Collection Accounts as listed on <u>Exhibit 2</u> attached to the Lamberty Declaration. In each instance, Debtor does not have a legal interest in the segregated funds held, except and until fees and expenses are owing to Debtor on account of work it performed. The administrative burden of moving or transferring these Agency Accounts would be significant and, since the funds do not belong to the Debtor, it is submitted that changes to the Agency Accounts are not required by Debtor's bankruptcy filing.

**E.      Business Forms.**

In addition, to minimize expenses, Debtor further requests that it be authorized to continue to use its correspondence and business forms, including, but not limited to, multi-copy checks, letterhead, envelopes, promotional materials, and other business forms (collectively, the "<u>Business Forms</u>"), substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor in possession. Because most of Debtor's payments were made out of its bank accounts at Union Bank, to the extent they use those bank accounts for payroll and vendor payments, it is requesting to continue to use such check stock; provided, however, that Debtor shall commence marking "Debtor in Possession" on its own existing check stock and wire transfer instructions instead of having new stock printed with such marking.

If Debtor is not permitted to maintain and utilize its current Bank Accounts and its existing Business Forms, including check stock, the resultant prejudice will include significant (i) disruption to the Debtor's ordinary financial affairs and business operations, (ii) delay in the administration of Debtor's estate, and (iii) cost to the estate to set up new systems, open new accounts, print new business forms, and print new checks.

**F.      Investment and Deposit Requirements.**

Additionally, the Debtor requests waiver of strict application of the requirements of section 345 of the Bankruptcy Code. Section 345(a) of the Bankruptcy Code permits a debtor to

9

deposit or invest the money of a bankruptcy estate in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). To the extent such deposits or investments are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that a debtor obtain from the entity with which the money is deposited (a) a bond in favor of the United States secured by the undertaking of an adequate corporate surety or (b) a deposit of certain governmental securities. 11 U.S.C. § 345(b).

A court is authorized to relieve a debtor in possession of the deposit and investment restrictions "for cause." 11 U.S.C. § 345(b)(2). Here, Debtor's Bank Accounts are maintained at banks that have been approved by the U.S. Trustee as authorized bank depositories in this District. However, it is possible that some of its Bank Accounts do or will contain funds in excess of the amounts insured by the Federal Deposit Insurance Corporation (the "FDIC"). To the extent funds in the Bank Accounts exceed the amounts insured by the FDIC, the Debtor believes that such amounts will be secure. Among other considerations, the Banks are highly rated and secure federally chartered banks subject to supervision by federal banking regulators, and Debtor retains the right to remove funds held at such banks.

As noted above, the financial institutions at which the Debtor maintains its Bank Accounts are financially stable banking institutions. Thus, good cause exists to waive the investment and deposit restrictions under section 345(b) of the Bankruptcy Code, subject to the limitations set forth below to the extent that the Debtor's Bank Accounts do not comply. The Debtor respectfully requests authority to maintain its cash in the Bank Accounts in a safe and prudent manner, in accordance with its existing practices.

Courts in this district have granted relief similar to the relief sought in the Motion in other cases when appropriate to lessen the burden on the debtors. *See, e.g., In re Lucky Dragon Hotel & Casino, LLC*, BK-S-18-10792-leb, Dkt. #77; *In re Kittusamy, LLP*, BK-S-15-13868-abl, Dkt. #163; *In re Stations Casinos, Inc.*, BK-S-09-52477-GWZ, Dkt. #50; *In re 155 East Tropicana,*

LLC, BK-S-11-22216-BAM, Dkt. #55. The Debtor respectfully submits that similar relief is appropriate in this Chapter 11 Case.

## V.
## CONCLUSION

Based on the above, Debtor respectfully requests that the Court enter an order in substantially the form as attached hereto as Exhibit 1, thereby granting Debtor (i) the authority to continue to operate the Cash Management System, including to fund the operations of Debtor in the ordinary course of business, consistent with its prepetition practices, as modified herein, (ii) the authority to honor certain prepetition obligations related to the use of the Cash Management System, (iii) the authority to retain its prepetition Bank Accounts; (iv) the authority to retain Agency and Collection Accounts; (v) the authority to maintain existing business forms, and (vi) a waiver of compliance with section 345 of the Bankruptcy Code. Debtor also requests such other and further relief as is just and proper.

Respectfully submitted this 31st day of October, 2018.

CLARK HILL PLLC

CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169

*[Proposed] Counsel for Debtor in Possession*

# EXHIBIT 1

# EXHIBIT 1

CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
CLARK HILL PLLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:   (702) 862-8300
Facsimile:    (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com

*[Proposed] Counsel for Debtor in Possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CREDIT MANAGEMENT ASSOCIATION, INC. | Case No. BK-18-16487-MKN<br>Chapter 11<br><br>Hearing Date: OST Pending<br>Hearing Time: OST Pending |

**INTERIM ORDER GRANTING EMERGENCY MOTION (I) FOR CONTINUED USE OF DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM, (II) TO RETAIN PREPETITION BANK ACCOUNTS, (III) TO RETAIN PREPETITION AGENCY ACCOUNTS, (IV) TO USE EXISTING BUSINESS FORMS; AND (V) TO WAIVE COMPLIANCE WITH THE INVESTMENT AND DEPOSIT REQUIREMENTS OF SECTION 345 OF THE BANKRUPTCY CODE**

The *Emergency Motion for Order (1) Authorizing Continued Use of Debtor's (i) Existing Cash Management System, (ii) Prepetition Bank Accounts, (iii) Prepetition Agency Accounts, and*

**[PROPOSED] ORDER GRANTING EMERGENCY MOTION AUTHORIZING USE OF CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AGENCY ACCOUNTS AND BUSINESS FORMS AND WAIVING COMPLIANCE WITH INVESTMENT AND DEPOSIT REQUIREMENTS**

*(iv) Business Forms; and (2) Waiving Compliance with the Investment and Deposit Requirements of Section 345(b) of the Bankruptcy Code* (the "Motion") having come before the Court for an emergency hearing on the above captioned date and time (the "Hearing"), with all appearances having been noted on the record; and the Court having reviewed and considered the Motion, as well as the *Omnibus Declaration of Kimberly Lamberty in Support of Debtor's First Day Motions*; the Court having made its findings of fact and conclusions of law on the record at the Hearing, which are incorporated herein pursuant to Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; it appearing that the relief requested is necessary to preserve the Debtor's ongoing operations, and is in the best interest of the Debtor's estate, creditors, and all parties-in-interest; and for good cause appearing:

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. Debtor is authorized and empowered to: (a) maintain its Cash Management System[1] and continue to use its Bank Accounts for all purposes as debtor in possession accounts; (b) use, in their present form, existing checks and other documents related to the Bank Accounts (defined below); (c) pay post-petition ordinary course bank fees in connection with the Bank Accounts; and (d) perform their obligations under the documents and agreements governing the Bank Accounts.

3. The Debtor is authorized and empowered to retain the prepetition Agency Accounts set forth on Exhibit 2 to the Lamberty Declaration

4. Union Bank and Bank of America (collectively "Debtor's Banks"), at which Debtor maintains accounts (the "Bank Accounts"), are each authorized and directed to: (a) continue to administer, service, and maintain the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and ordinary course; and (b) to pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the

---

[1] Capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the underlying Motion.

"Debits") on account of a claim arising on or after the Petition Date, so long as there are sufficient collected funds in the relevant Bank Accounts and in accordance with merchant service agreements, if applicable.

5.   Except as otherwise permitted by an order of the Court, no Debits issued on the Bank Accounts prior to, but presented after, the commencement of Debtor's Chapter 11 Case shall be honored or paid, provided that Debtor issues a stop payment order in accordance with the terms of the documents and agreements governing such Bank Accounts.

6.   Debtor shall promptly furnish to Debtor's Banks a list of those Debits drawn or issued in payment of prepetition claims, the payment of which has been authorized by any order of the Court, and stop payment orders for any prepetition Debits that it desires to be dishonored. Debtor's Banks are authorized and directed to rely on the representations of Debtor as to which Debits are authorized to be honored and dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date, and whether or not Debtor's Banks believe the payment is authorized by an order of the Court.

7.   Debtor's Banks are authorized and directed to debit Debtor's Bank Accounts in the ordinary course of business for all Debits presented for payment or exchanged for cashier's checks prior to the commencement of this Chapter 11 Case. Debtor shall reimburse Debtor's Banks for any claim arising prior to or after the Petition Date in connection with Debits deposited with Debtor's Banks that have been dishonored or returned for insufficient funds in the applicable accounts.

8.   Debtor's Banks shall implement reasonable handling procedures to effectuate the terms of this Order. No bank that implements such handling procedures will be liable to Debtor or its estate, or otherwise held in violation of this Order for honoring a prepetition Debit or other Debit: (a) at the direction of Debtor that such prepetition Debit or other Debit be honored; (b) in the good faith belief that the Court has authorized that such prepetition Debit or other Debit be honored; or (c) as a result of an innocent mistake made despite implementation of such handling procedures.

9.  The relief, rights, and responsibilities requested herein are deemed to apply to any and all bank accounts maintained in Debtor's name.

10. To the extent any other order is entered directing a Bank to honor Debits made, drawn, or issued in payment of prepetition claims, the obligation to honor such items are subject to this Order.

11. Debtor and Debtor's Banks are authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the Bank Accounts, except and to the extent otherwise directed by the terms of the Order. Debtor requests that Debtor's Banks are authorized to continue offsetting any funds deposited in the Bank Accounts by either Debtor to the extent necessary to cover any fees, charges, and assessments (other than attorneys' fees), set forth or provided for in the agreements governing the Bank Accounts or as otherwise permitted in the ordinary course of business pursuant to the agreements governing the Bank Accounts.

12. Debtor and Debtor's Banks are authorized and directed to perform their obligations pursuant to the terms of the documents governing any corporate credit card program and processing or servicing agreements between Debtor and Debtor's Banks. Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents, and to pay fees, charges, and expenses which may be required or necessary for Debtor's performance under any corporate credit card program and processing or servicing agreement.

13. Nothing in this Order prevents Debtor from closing any of the Bank Accounts as they deem necessary and appropriate, as long as funds withdrawn therefrom are utilized only for purpose consistent with the Court's orders with respect to cash collateral and/or debtor-in-possession financing, and any budgets thereto.

14. Debtor is excepted from compliance with section 345 of the Bankruptcy Code.

15. The Debtor is authorized to maintain and use its existing business forms.

. . .

. . .

15. The Court retains jurisdiction regarding any issues or disputes arising under or related to the interpretation or implementation of this Order.

17. A final hearing pursuant to Fed. R. Bankr. P. 4001(b) (the "Final Hearing") will be held on _____ at _:_ _.m. to determine the use of cash collateral during the pendency of this Chapter 11 case and all other relief sought by the Motion.

16. Any opposition to the final relief requested in the Motion shall be made in writing and filed with the Court no later than fourteen days prior to the Final Hearing. Any such opposition shall be served in accordance with Fed. R. Bankr. P. 2002. Any reply to any such opposition shall be filed and served no later than seven days prior to the Final Hearing.

**IT IS SO ORDERED.**

Submitted by:

_____
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
CLARK HILL PLLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:   (702) 862-8300
Facsimile:    (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com

*[Proposed] Counsel for Debtor*

# # #

5
**[PROPOSED] ORDER GRANTING EMERGENCY MOTION AUTHORIZING USE OF CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AGENCY ACCOUNT AND BUSINESS FORMS AND WAIVING COMPLIANCE WITH INVESTMENT AND DEPOSIT REQUIREMENTS**