1    CANDACE C. CARLYON, ESQ.
     Nevada Bar No. 2666
2    TRACY M. O'STEEN, ESQ.
     Nevada Bar No. 10949
3    CLARK HILL PLLC
     3800 Howard Hughes Parkway, Suite 500
4    Las Vegas, NV 89169
     Telephone:    (702) 862-8300
5    Facsimile:    (702) 862-8400
     CCarlyon@ClarkHill.com
6    TOSteen@ClarkHill.com

7    *Counsel for Debtor*

8                    UNITED STATES BANKRUPTCY COURT

9                           DISTRICT OF NEVADA

10
     In re                                  Case No. BK-18-16487-MKN
11                                          Chapter 11
     CREDIT MANAGEMENT ASSOCIATION,
12   INC.                                   **DEBTOR'S FIRST AMENDED PLAN
                                            OF REORGANIZATION**
13

14                                          Hearing Date:  July 31, 2019
                                            Hearing Time:  9:30 a.m.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF CONTENTS</u>**

ARTICLE I, Introduction………………………………………………….……………..1

ARTICLE II, Definitions…………………………………………………….……………...1

ARTICLE III, Treatment of Unclassified Claims………………………………………8

ARTICLE IV, Classification of Claims and Membership Interests………………………8

ARTICLE V, Treatment of Classified Claims and Interests……………………………...9

ARTICLE VI, Means for Implementation of the Plan…………………………………11

ARTICLE VII, Fair and Equitable Treatment of Impaired Classes………………………12

ARTICLE VIII, Conditions Precedent to Effective Date…………………………………12

ARTICLE IX, Disallowance of Claims/Retention of Property…………………………...12

ARTICLE X, Designation of Reorganized Debtor as Representatives of Estate…………14

ARTICLE XI, Modification of Plan……………………………………………….…………14

ARTICLE XII, Executory Contracts…………………………………………………...14

ARTICLE XIII, Effect of Confirmation of Plan…………………………………………16

ARTICLE XIV, Retention of Jurisdiction……………………………………………..20

ARTICLE XV, Treatment of Disputed Claims……………………………...……..21

ARTICLE XVI, Post-Petition Reporting……………………………………………22

## ARTICLE I

## INTRODUCTION

Debtor, Credit Management Association, Inc. (hereinafter "Debtor"), hereby proposes its First Amended Chapter 11 Plan of Reorganization (the "Plan") for the resolution of the claims of its creditors.  Reference is made to Debtor's Disclosure Statement to Accompany Debtor's Chapter 11 Plan of Reorganization (the "Disclosure Statement") for a discussion of Debtor's history, business, property and financial information and for a summary of the Plan and related matters.

All holders of claims are encouraged to read this Plan and the accompanying Disclosure Statement in their entirety before voting to accept or reject this Plan.  No materials, other than the Disclosure Statement and the Exhibits attached thereto and referenced therein, have been approved by the United States Bankruptcy Court for the District of Nevada for use in soliciting acceptances or rejections of this Plan.

## ARTICLE II

## DEFINITIONS

The definitions contained in the Bankruptcy Code are incorporated herein.  Whether or not inconsistent with the definitions contained in the Bankruptcy Code, the following terms used herein shall have the following meanings:

**2.1  Adjustments Bureau**.  The portion of CMA's business operations related to acting as the assignee for benefit of creditors; auctioneer; liquidating agent; disbursing agent; or similar activities.

**2.2  Administrative Claim**.  A Claim for costs and expenses of administration allowed under section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code, including, without limitation:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

1

**2.3** **Allowed Claim**.  A Claim or any portion thereof that is not a Disputed Claim: (i) that is allowed pursuant (a) to this Plan or Final Order of the Bankruptcy Court (b) to any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (c) to any stipulation with Debtor or Reorganized Debtor executed on or after the Confirmation Date and approved by the Bankruptcy Court or (d) to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (ii) proof of which, requests for payment of which, or application for allowance of which, was Filed or deemed to be Filed on or before the Bar Date, as the case may be, for filing proofs of Claim or requests for payment of Claims of such type against Debtor; or (iii) if no proof of Claim is filed, which has been or hereafter is listed by Debtor in the Schedules of Assets and Liabilities as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim. Notwithstanding anything herein to the contrary, by treating a Claim as an Allowed Claim Debtor does not waive its rights to contest the amount and validity of any disputed, contingent or unliquidated Claim in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced.

**2.4** **Allowed Priority Claim**.  An Allowed Claim entitled to priority pursuant to sections 507(a)(3), (4) or (6) of the Bankruptcy Code.

**2.5** **Allowed Secured Claim**.  An Allowed Claim secured by a lien, security interest or other charge against the property in which the Estate has an interest, or which is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in the Estate's interest in such property, or to the extent of the amount subject to any set-off, as the case may be.  An Allowed Secured Claim may include post-petition interest if permitted under section 506(b) of the Bankruptcy Code.

**2.6** **Allowed Tax Claim**.  An Allowed Unsecured Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

2

**2.7  Allowed Unsecured Claim**.  An Allowed Claim for which there are no assets of Debtor serving as security, but not including any Allowed Priority Claims or Allowed Tax Claims.

**2.8  Avoidance Action**.  Any adversary proceeding brought in connection with this Chapter 11 Case to recover money or property on account of transactions avoidable under sections 544, 547, 548, 549 or 550 of the Bankruptcy Code.

**2.9  Bankruptcy Code or Code**.  Title 11 of the United States Code, as now in effect or hereafter amended.  All citations in the Plan or Disclosure Statement to chapter and section numbers are to the Code unless otherwise expressly indicated.

**2.10  Bankruptcy Court or Court**.  The United States Bankruptcy Court for the District of Nevada, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code, and all other applicable statutes, rules and regulations.

**2.11  Bankruptcy Rules**.  The Federal Rules of Bankruptcy Procedure.

**2.12  Bar Date**.  The date or dates established by this Plan, Order of the Bankruptcy Court or the Bankruptcy Code or Bankruptcy Rules for the filing of proofs of claim with the Bankruptcy Court, which was March 6, 2019 for creditors, except for governmental units, and April 29, 2019 for governmental units.

**2.13  Business Day.**  Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

**2.14  Causes of Action**.  All actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, up to and through the Effective Date.

2.15 **Chapter 11 Case**.  The Chapter 11 proceeding, known as *In re Credit Management Association, Inc.*, Case No. BK-S-18-16487-MKN, pending before the United States Bankruptcy Court, District of Nevada.

2.16 **Claim**.  Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.17 **Claimants or Creditors**.  Persons or entities holding Claims, whether or not such Claim are Allowed Claims.

2.18 **Class**.  A category of holders of Claims which are substantially similar to other Claims and into which Allowed Claims are grouped and classified pursuant to Article IV of the Plan.  The Classes provided for in the Plan are the following:

        a.      Class 1: Secured Claim of Valley Bank.

        b.      Class 2:  Claims for Retiree Benefits.

        c.      Class 3A:  Pension Plan Benefits.

        d.      Class 3B:  PBGC Claims.

        e.      Class 4:  Administrative Convenience Claims.

        f.      Class 5:  All other Unsecured Claims.

        g.      Class 6: All Membership Interests in Debtor.

2.19 **Confirmation**.  The entry by the Clerk of the Bankruptcy Court on the Court's docket of the Confirmation Order.

2.20 **Confirmation Date**.  The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Court docket.

2.21 **Confirmation Hearing**.  The duly noticed initial hearing before the Bankruptcy Court to confirm this Plan pursuant to section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned

4

without further notice other than the announcement of the adjourned dates at the Confirmation Hearing.

**2.22** **Confirmation Order**.  The order entered by the Clerk of the Bankruptcy Court confirming the Plan.

**2.23** **Debtor**.  Credit Management Association, Inc., a non-profit California corporation, in its capacity as debtor and debtor-in-possession.

**2.24** **Disclosure Statement.**  The Disclosure Statement accompanying this Plan which was prepared by Debtor as required by section 1125 of the Bankruptcy Code and approved by an order of the Bankruptcy Court.

**2.25** **Disputed Claim**.  A Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which (1) an objection has been or may be timely Filed, and which objection, if timely Filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or by Order of the Bankruptcy Court and has not been overruled or denied by a Final Order; or (2) litigation (including any appeal) is pending, in which case the Claim shall be a Disputed Claim until such time as a Final Order is entered determining the amount of such Claim.

**2.26** **Effective Date**.  Except as otherwise ordered by the Court, the Effective Date of the Plan shall be the first day of the first month at least fifteen calendar days after the satisfaction of each of the Conditions Precedent to Confirmation Date as set forth in Article VIII of this Plan. Upon its occurrence, Debtor shall promptly file a notice of Effective Date with the Bankruptcy Court.

**2.27** **ERISA**.  The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 as amended, (2012 & Supp. V 2017), and the regulations promulgated thereunder.

**2.28** **Estate**.  The estate created in this Chapter 11 Case for Debtor under section 541 of the Bankruptcy Code.

**2.29** **Executory Contracts**.  A contract or an unexpired lease to which Debtor is a party and as to which performance remains due from each party to the contract.

**2.30** **Filed or on File**.  A pleading filed with the Clerk of the Bankruptcy Court, District of Nevada, in this Chapter 11 Case.

5

2.31 **Final Order**.  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case, which has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from this certiorari was sought.

2.32 **Impaired**.  Impaired within the meaning of section 1124 of the Bankruptcy Code.

2.33 **Litigation Claims**.  Any Causes of Action held by the Debtor as of the Effective Date, including the right to pursue Avoiding Actions, whether or not reflected in the Debtor's Schedules and Statements and Disclosure Statement.

2.34 **Local Rules**.  The Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

2.35 **Membership Interests**.  The rights of and interests of Members in Debtor which, given that Debtor is a non-profit corporation, are not in the nature of an equity security as defined in section 101(16) of the Bankruptcy Code.

2.36 **Net Real Property Sale Proceeds**. The amounts actually payable to Debtor from the sale of any of its Real Property, after payment of all costs of sale, closing costs, and related fees, commissions, and prorations, and following payment in full of the Valley Bank Secured Claim.

2.37 **Order**.  An order or judgment of the Bankruptcy Court as entered by the Clerk of the Court on the docket in this Case.

2.38 **PBGC**.  The Pension Benefit Guaranty Corporation, the United States government agency created under Title IV of ERISA to administer the federal pension insurance program.

2.39 **PBGC Claims**.  PBGC's three amended Claims for the Pension Plan's (1) unpaid insurance premiums in the amount of $35,065.18; (2) unpaid minimum funding contributions under 29 U.S.C. § 1342(d) and 26 U.S.C. § 412 in the amount of $218,074; and (3) unfunded benefit liabilities under 29 U.S.C. § 1362(b) in the amount of $2,706,698.

2.40 **PBGC Termination Premiums**.  The "termination premiums" due to PBGC pursuant to 29 U.S.C. § 1306(a)(7) in the amount of $1,250 per plan participant per year for three years.

**2.41  Pension Plan**.  The Retirement Plan for Employees of Credit Managers Association of California.

**2.42  Person**.  Any natural person, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision thereof, governmental unit (as defined in the Bankruptcy Code), official committee appointed by the United States Trustee, or other legal entity.

**2.43  Petition Date**.  October 31, 2018, which is the date that Debtor filed its voluntary petition commencing the Chapter 11 Case.

**2.44  Plan**.  The First Amended Chapter 11 Plan of Reorganization proposed by Debtor, and all exhibits, schedules, releases, and other attachment annexed thereto, as the same may be amended, modified or supplemented from time to time in accordance with the Code.

**2.45  Real Property**.  The real property and improvements commonly known as 3110 W. Cheyenne, North Las Vegas, NV, 89032.

**2.46  Reorganized Debtor**.  Debtor following the Effective Date.

**2.47  Retiree Benefits**.  This term shall have the meaning set forth in Bankruptcy Code section 1114(a), which states:  "[T]he term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title."

**2.48  Scheduled**.  Set forth on the Schedules of Asset and Liabilities on file with the Clerk of the Bankruptcy Court.

**2.49  Schedules of Assets and Liabilities**.  The Schedules of Assets and Liabilities filed by Debtor with the Clerk of the Bankruptcy Court, as the same have been or may be amended from time to time prior to the Effective Date of the Plan.

**2.50  Unclaimed Funds**.  Any funds represented by checks which were either:  (1) issued and mailed prior to the Petition Date for which the payee did not file a Claim prior to the Bar Date;

7

or (2) issued from or after the Petition Date and prior to the Effective Date which were not negotiated by the payee within 90 days of issuance; or (3) issued pursuant to the Plan which are not negotiated by the payee within 90 days of issuance.

## ARTICLE III

### TREATMENT OF UNCLASSIFIED CLAIMS

**3.1 Administrative Claims**.  Unless the holder of a particular Claim agrees otherwise, each holder of an Allowed Administrative Claim, including U.S. Trustee fees, shall be paid in full, in cash, on the Effective Date, or as soon thereafter as such Administrative Claims have been allowed by Final Order of the Court or become due.  U.S. Trustee fees which become due post-Confirmation will be timely paid. Debtor anticipates that the bulk of its administrative claim liability will be related to payment of reorganization counsel.   U.S. Trustee Fees shall be allowed as due without further order of the Court, and no application for payment of U.S. Trustee Fees shall be required.

**3.2 Allowed Tax Claims**.  Each Allowed Tax Claim, if any, in full and final satisfaction of such Allowed Claim, shall be paid in full, with interest at the legally applicable rate, in 19 equal quarterly payments commencing 90 days after the Effective Date, with a minimum initial payment of $100.   Debtor knows of no outstanding Tax Claims.

**3.3 Allowed Priority Claims**. Each Allowed Priority Claim, if any, in full and final satisfaction of such Allowed Claim, shall be paid in full, without interest, in 19 equal quarterly payments commencing ninety (90) days after the Effective Date.  Debtor knows of no outstanding Priority Claims.

**3.4 PBGC Termination Premiums**.  Debtor will pay $112,500 in full and final settlement of the PBGC Termination Premiums, within 30 days following the Effective Date.

## ARTICLE IV

### CLASSIFICATION OF CLAIMS AND MEMBERSHIP INTERESTS

**4.1** For purposes of satisfying Debtor's obligations created under the Plan, the Allowed Claims of the Creditors and the Membership Interests of Debtor have been classified as follows:

    a.      Class 1:  Valley Bank.

8

b        Class 2:  Retiree Benefits.

c.       Class 3A:  Pension Plan Benefits.

d.       Class 3B:  PBGC Claims.

e.       Class 4:  Administrative Convenience Claims.

f.       Class 5:  All other Unsecured Claims.

g.       Class 6:  All Membership Interests in Debtor.

**ARTICLE V**

**TREATMENT OF CLASSIFIED CLASSES**

**5.1  Class 1 Valley Bank Secured Claim.**

The Valley Bank Claim as of the Petition Date was approximately $800,000.  On or about April 30, 2019, Debtor closed the sale of its real property located at 3110 W. Cheyenne, North Las Vegas, Nevada (the "Real Property"), and the remaining Valley Bank Secured Claim was paid in full.  Valley Bank will retain all payments made (whether prior or subsequent to the Petition Date) in full satisfaction of its claims.  Class 1 is unimpaired.

**5.2  Class 2 Retiree Benefits.**

Debtor believes that the only Retiree Benefits are owed to Nellia Venier, former Secretary of CMA.  Pursuant to a Separation Agreement between Ms. Vernier and CMA, CMA agreed to pay Ms. Venier, *inter alia*, "medical insurance premiums for the existing medical insurance plan or subsequent [CMA] plan for the remainder of Employee's lifetime, or until Employee finds new employment which provides a medical insurance plan."  CMA currently pays Ms. Venier reimbursement of medical insurance at the rate of $700.37 per month.  Debtor is current in payments related to those medical/insurance reimbursements.  The Plan calls for payment of Retiree Benefits as due (which shall not include coverage at a higher level than currently offered to CMA employees).  Accordingly, Class II is unimpaired.

**5.3  Class 3 Claims Related to the Pension Plan.**

On May 6, 2019, pursuant to ERISA, the Debtor and PBGC entered into an agreement terminating the Pension Plan, establishing the Pension Plan's termination date as March 31, 2019, and appointing PBGC as statutory trustee of the Pension Plan.

**Class 3A, Pension Plan Benefits.**  Class 3A consists of holders of Pension Plan benefits. Because the Pension Plan has terminated and PBGC is the Pension Plan's statutory trustee pursuant to ERISA, PBGC will pay to employees who participate in the Pension Plan ("Participants") their benefits under the Pension Plan, subject to statutory limits.  The Debtor has no liability to pay to Participants their benefits under the Pension Plan.

**Class 3B, PBGC Claims.**  Class 3B consists of the PBGC Claims totaling $2,959,837.18, to be paid *pro rata* with Class 5 Unsecured Claims to the extent of available funds for payment of such creditors.  Class 3B is impaired.

**5.4  Class 4 Administrative Convenience Claims.**

The Bankruptcy Code provides that a plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.  Debtor has designated claims of $1,000 or less (or larger claims where the holder elects to reduce the claim to $1,000), as belonging in the Class 4 Administrative Convenience Class.  Allowed Class 4 claims will be paid a one-time distribution of 50% of the amount of the allowed claim, to be paid within 90 days of the later of the Effective Date or the closing of the sale of the Real Property. The Schedules reflect that the total of such potential claims is approximately $3,000.  Class 4 is impaired.

**5.5  Class 5 General Unsecured Claims.**

The holders of Allowed Unsecured Claims, other than those that require or elect treatment provided under Class 4, shall receive a *pro rata* distribution of funds available to payment of Class 5 Claims.  Such funds shall consist of (1) 10% of the Net Real Property Sale Proceeds, and (2) 100% of the proceeds of the Life Insurance Policies (as such policies are paid out on the death of each insured).  An initial distribution on Class 5 Claims shall be paid within 180 days of the Effective Date, and additional distributions shall be made within 90 days following the receipt of the proceeds of each of the Life Insurance Policies.  Class 5 is impaired.

**5.6  Class 6 Membership Interests.**

Debtors' membership interests are held by approximately 800 members, who pay a $495.00 annual fee for full membership or a $265.00 annual fee for an Associate membership.

10

CMA is a non-profit entity, and membership does not carry any economic interest in CMA. Postpetition, CMA will continue to honor its Membership Interests, and to offer new and renewed memberships in the ordinary course of its business.  Class 6 is unimpaired.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1  Continued Operations.

Debtor plans to continue to operate its business under current management.  Senior management will continue to receive salary and benefits consistent with pre-petition policies. Debtor will continue its cost-cutting efforts, including downsizing its operations, while focusing on member benefits.

### 6.2  Proceeds of Sale of the Real Property.

10% of Net Sale Proceeds shall be earmarked for payment to Class 3B and Class 5 creditors.

### 6.3  Life Insurance Policies.

As discussed in Section III(A)(4) of the Disclosure Statement, Debtor is the owner of certain Life Insurance Policies with respect to former key employees.  The combined death benefit on the Life Insurance Policies is $1,130,000. As Debtor collects on the policies, the proceeds will be earmarked for distribution to Class 5 Creditors.

### 6.4  Litigation Claims.

Debtor may, at its option, pursue, compromise or release any Litigation Claims.

### 6.5  Unclaimed Funds.

Any funds associated with pre-petition checks issued by the Debtor and uncashed as of the Petition Date shall constitute assets of the Debtor.  Any funds associated with checks issued pursuant to the Plan which are not cashed within 180 days of distribution shall constitute assets of the Debtor.  Assets of the Debtor shall not constitute, and shall not be reportable as, "unclaimed property" or any similar designation under applicable non-bankruptcy law.

### 6.6  Adjustments Bureau.

For matters within its Adjustments Bureau, Debtor shall have the option of (1) performing

11

remaining services, and retaining its fees and expenses[1]; or (2) assigning the contract to a third party.    If the contracts are assigned, Debtor may or may not receive compensation for the assignment.  Debtor shall have no liability for any claims arising or relating to CMA's activities prior to the Effective Date, including with respect to matters handled by the Debtor's Adjustments Bureau.  Debtor shall not be liable for obligations of the entities for which Debtor serves as Assignee for the Benefit of Creditors, Disbursing Agent, Liquidating Agent, or in a similar capacity.

## ARTICLE VII

## <u>FAIR AND EQUITABLE TREATMENT OF IMPAIRED CLASSES</u>

In the event that any Impaired Class is determined to have rejected this Plan in accordance with section 1126 of the Bankruptcy Code, Debtor may invoke the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for Confirmation of this Plan. Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VIII

## <u>CONDITIONS PRECEDENT TO EFFECTIVE DATE</u>

The following are conditions precedent to the occurrence of the Effective Date:

**8.1**    The Court shall have entered the Confirmation Order in form and substance acceptable to Debtor; and

**8.2**  The Confirmation Order shall be Final, unless this condition is waived in writing by the Debtor.

## ARTICLE IX

## <u>DISALLOWANCE OF CLAIMS/RETENTION OF PROPERTY</u>

**9.1**    Notwithstanding anything to the contrary herein, no creditors' attorney's fees or other "professional" fees (as the term "professional" is defined in section 327 of the Bankruptcy

---

[1] This may include reimbursement to CMA for fees paid to reorganization counsel for services relating to a specific ABC.

12

Code), default interest, late penalties or any similar charges claimed before the Effective Date shall be compensable by Debtor, or out of property of the Estate, nor shall the same constitute part of an Allowed Claim: (a) except as permitted by section 506 (a) of the Bankruptcy Code, and (b) unless and until the Creditor seeking to recover such fees and charges from Debtor, or the Estate, has had such fees and charges approved by the Bankruptcy Court as "reasonable", or otherwise properly payable by Debtor or the Estate.  Such approval must be made through a motion for the recovery of same, made on no less than thirty (30) days' written notice to Debtor, its attorneys, and the Office of the United States Trustee.   ANY SUCH MOTION MUST BE MADE WITHIN THIRTY DAYS AFTER THE EFFECTIVE DATE, OR THE ITEMS DESCRIBED IN THIS SECTION 9.1 SHALL BE FOREVER DISCHARGED.

**9.2**    Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any Claim of any Person from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 544, 545, 547, 548, or 549 of the Bankruptcy Code unless such Person or transferee has paid the amount, or turned over any such property for which such Person or transferee is liable.

**9.3**    Except as otherwise specifically provided herein, the Reorganized Debtor shall retain all property of the Estate including all litigation claims of any nature whatsoever, whether or not discussed in the Disclosure Statement, and whether or not known to Debtor, including any rights under avoidance actions, all of which shall become property of the Reorganized Debtor.

**9.4**    All Claims objections and motions for allowance of Claims shall be filed within three (3) months after the Effective Date, unless any interested party obtains an extension of this deadline from the Bankruptcy Court after notice and a hearing.

**9.5**    Any unnegotiated payment(s) called for under the Plan, which includes (a) checks issued by the Reorganized Debtor which have been returned as undeliverable without a forwarding address; (b) checks issued by the Reorganized Debtor which were not mailed or delivered because of the absence of a proper address with which to mail or deliver same; or (c) checks issued by the

Reorganized Debtor pursuant to the Plan which have not cleared the Debtor's bank account within

months of issue, shall become property of the Reorganized Debtor.

## ARTICLE X

### DESIGNATION OF REORGANIZED DEBTOR AS REPRESENTATIVES OF ESTATE

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor, through its President, is hereby designated as the representative of the Estate of Debtor.

## ARTICLE XI

### MODIFICATION OF PLAN

Debtor may propose amendments or modifications to this Plan at any time prior to Confirmation or at the Confirmation Hearing, without leave of the Court, upon proper notice. After Confirmation, Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the order of confirmation, in such manner as may be necessary to carry out the purposes of this Plan. Debtor anticipates that Confirmation litigation may include challenges to the fairness of certain terms of the treatment of the Claims of Creditors; in the event the Court finds that the proposed treatment of those Creditors is not fair and equitable or otherwise renders the Plan unconfirmable, but that a modified treatment would be fair and equitable or otherwise render the Plan confirmable, or in the event Debtor seeks to avoid, resolve or attempt to avoid or resolve such objections, Debtor may elect to modify the Plan to incorporate such different terms without additional notice or solicitation, so long as distributions to other creditors are not negatively impacted.

## ARTICLE XII

### EXECUTORY CONTRACTS

**12.1    Assumption.**    In addition to any executory contracts previously assumed, Debtor shall (subject to the provisions set forth in this Article 12) assume the following Executory Contracts.

a.    Insurance contracts with Hallmark Specialty Insurance Co.; Indian Harbor Ins. Co.; Lloyds of London; Technology Insurance Company; Travelers' Casualty & Surety Co. of

America; Travelers' Indemnity; Westchester Fire Insurance Co; and Zurich American Insurance Company.

      b.     Software and information technology contracts with Creditsafe, USA; Cutting Edge Business Resources and Solutions; Eventbrite, Inc.; IBM; Lunar Pages; Netnation Communications, Inc.; Panterra Networks, Inc.; Sage; SentryOne; Technology Insurance Company; and Trade Information Exchange.

      c.     Exclusive provider agreement with C&S Associates d/b/a NCS.

      d.     CCH processing contract with American Check Management.

      e.     Employment contracts with Kimberly Lamberty and Juliet Churchill.

      f.     Agreement for professional services with Macias, Gini & O'Connell and Kurtzman Carson Consultants (as approved by the Bankruptcy Court in connection with their employment applications).

      g.     Month to month contracts with ADP

      h.     TPX Communications Contract #106470 (email server).

Debtor believes that it is current in its payments under the contracts to be assumed. Any request for cure or adequate assurance (or other objection to the assumption of any Executory Contract) must be filed no later than fourteen days prior to the Confirmation Hearing, to be adjudicated in connection with the Confirmation Hearing. Except as otherwise ordered in connection with the Confirmation Hearing, Debtor shall have no obligation for any payment or performance under any Executory Contract arising prior to the Petition Date.

**12.2**    **Rejection.** All other executory contracts, including contracts with Alarm Co.; Corelogic; Cox Communications; Eagle One Protection; Harmony Fire Protection; Mail Dispatch; MailFinance; PGI; Pitney Bowes Global Finance Services LLC; Purchase Power; Siemens; Toshiba; and TPX Communications Contract #106472 and Contract #151007, will be rejected under the Plan, and all parties to executory contracts with the Debtor shall have until 30 days following the Effective Date to file unsecured claims. Any property owned by parties to rejected contracts shall have thirty days following the Confirmation Date to arrange to pick up such property, otherwise, it may be disposed of by the Debtor.

## ARTICLE XIII

### EFFECT OF CONFIRMATION OF PLAN

**13.1    Binding Effect**.  From and after the confirmation date, the Plan will be binding and inure to the benefit of Debtor, all present and former holders of Claims and the Membership Interests, and their respective successors and assigns, including the Reorganized Debtor.

**13.2    Vesting of Assets**.  Upon the Effective Date, all property of the estate will vest in the Reorganized Debtor free and clear of all claims, liens, encumbrances, and other interests arising prior to the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order. From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein. Without limiting the foregoing, pursuant to section 1123(b)(3) of the Bankruptcy Code, except for any causes of action expressly waived by Debtor pursuant to the terms of the plan, the Reorganized Debtor will retain and will have the exclusive right, in its discretion, to enforce, not enforce, or compromise against any person any and all causes of action of Debtor including, without limitation, the Litigation Claims.  The resolution of such causes of action not resolved as of the Confirmation Date will be the responsibility of the reorganized debtor's management.  Debtor reserves the right to bring any claims or causes of action, whether or not discussed in the Plan or Disclosure Statement, and whether or not currently known to Debtor.

**13.3    Discharge of Debtor**.  Upon the Effective Date and in consideration of the rights afforded in the Plan and the payments and distributions to be made thereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Membership Interest and any affiliate of such holder will be deemed to have forever waived, released, and discharged Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Membership Interests, Causes of Action, rights, and liabilities that arose prior to the Effective Date of any kind, nature, or description whatsoever, including any accrued interest, fees, or other charges, in exchange for the

treatment afforded to such Claims under the Plan, and each such holder will be deemed to have granted, and will grant to Debtor the waiver, release and discharge described in the Plan. Except as otherwise provided in the Plan, upon the Effective Date, all such holders of Claims and Membership Interests and their affiliates will be forever precluded and enjoined, pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against Debtor or the Reorganized Debtor, or against any of their Assets or property, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim or Proof of Interest.

Except for the treatment of Termination Premiums and the PBGC Claims as provided herein, and except as provided in §13.5 of the Plan, no provision contained in the Plan, the Confirmation Order, or any other document filed in this bankruptcy proceeding or any provision of the Bankruptcy Code, shall be construed as discharging, releasing, or relieving any Non-Debtor party from any liability with respect to the Pension Plan under Title I or Title IV of ERISA, or under any other law, government policy or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any Non-Debtor party as a result of the Plan's provisions for satisfaction, release, and discharge of claim.

**13.4   <u>Injunction</u>**.   Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Membership Interests in Debtor, along with their respective present or former employees, agents, officers, directors, or principals, and their assignees or successors in interest, are permanently enjoined, with respect to any such Claims or Membership Interests, as of the Confirmation Date, but subject to the occurrence of the Effective Date, from (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting Debtor, the Estate, or the Reorganized Debtor or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any

17

property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against Debtor, the Estate, or the Reorganized Debtor or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against Debtor, the Estate, or the Reorganized Debtor or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (e) taking any actions to interfere with the implementation or consummation of the Plan and (f) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, such as commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims, Membership Interests, and Causes of Action which are extinguished or released pursuant to the Plan; provided, however, that nothing contained herein will preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

**13.5   Exculpation and Limitation of Liability**.   None of Debtor, the Reorganized Debtor, or any of their respective current or former members, officers, directors, managers, employees, advisors, professionals, affiliates, or agents of any of the foregoing (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons, but solely in their capacities as such) will have or incur any liability for any act or omission in connection with, related to, or arising out of, without limitation, the Bankruptcy Case, the negotiation and execution of the Plan, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of the Plan, except (i) willful

misconduct, fraud, knowing misrepresentation, or gross negligence as determined by a Final Order of the Bankruptcy Court, and (ii) any liability under ERISA §§ 404, 405, 406, 409, 411. This provision applies to conduct occurring during or related to the Chapter 11 Case. The foregoing parties will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**13.6    Injunction Related to Releases, Exculpation and Interference with Plan**. The Confirmation Order will permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan. Such Persons will also be enjoined from taking any action to interfere with the Plan or the implementation of the Plan.

**13.7    Documents Modified**. From and after the Confirmation Date all loan documents, trust deeds and other contracts documenting Claims against the Debtor shall be deemed modified and/or superseded by the terms of the Plan. Debtor may obtain an order from the Bankruptcy Court to effectuate the execution and recording of such documents. After the Confirmation Date, Claims shall be paid only in accordance with the Plan, and any effort by any Claimant to compel Debtor to pay the holder of a Claim more than its Allowed Claim, or to pay its Claim in any manner other than as provided for in the Plan, shall constitute a violation of the Confirmation Order and Section 1141 of the Bankruptcy Code. All claimants holding negotiable instruments signed by Debtor which reflect a prepetition Claim shall, at Debtor's request, cause a legend or notation to be placed conspicuously on the face of any such instrument stating that the terms of this instrument have been modified by the terms of the Plan, and Debtor may withhold payments to the holders of any such instrument until they have proved that this action has in fact been taken.

**13.8    Cash Collateral Stipulations Superseded**. From and after the Confirmation Date, any cash collateral stipulation or order regarding the use of cash collateral then effective in this proceeding, shall be rendered null and void, and the terms of the Plan shall be controlling.

**13.9    Authorization**.    Pursuant to section 1142(a) of the Bankruptcy Code, notwithstanding any other applicable non-bankruptcy law, rule or regulation relating to financial condition, Debtor is authorized to carry out the terms of the Plan.

**13.10    Final Decree**.  The Estate will be considered to be fully administered, as provided in Bankruptcy Rule 3022, upon the commencement of payments under the Plan.  Debtor or Reorganized Debtor may file a motion with the Court to obtain a final decree and to close the case upon commencement of payment pursuant to the Plan.   In addition, if no final decree has been issued within 180 days of the Effective Date, any party may move for the entry of a Final Decree, and the Clerk of the Bankruptcy Court is authorized to enter a Final Decree without further notice pursuant to Local Rule 3022.

**ARTICLE XIV**

**RETENTION OF JURISDICTION**

**14.1    Bankruptcy Court's Retained Jurisdiction.** The Court shall retain jurisdiction of this Chapter 11 Case until this Plan has been fully consummated, for the limited purposes of:

a.    The Allowance or Classification of Claims, including the reexamination of Claims which have been allowed for the purposes of voting, and the determination of such objections as may be filed to Creditors' Claims.  The failure by Debtor to object to or examine any claim for the purpose of voting shall not be deemed to be a waiver of Debtor's right to object to or reexamine the Claim in whole or in part.

b.     The allowance of compensation or other administrative expenses.

c.    To hear and determine Claims concerning state, local, and federal taxes pursuant to sections 346, 505, 525, and 1146 of the Bankruptcy Code.

d.    To hear, conduct, and approve sales as provided by the Plan.

e.    To hear and determine all actions and proceedings that relate to pre-confirmation matters brought by Debtor whether such action or proceeding is brought before or after the Effective Date.

f.     The determination of any issues relating to the assumption or rejection of executory contracts and unexpired leases including the assumption or rejection of executory contracts or unexpired leases not expressly dealt with herein.

g.     The correction of any defects, the curing of any omission, or the reconciliation of any inconsistency of this Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

h.     The modification of this Plan pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

i.     The interpretation of the terms of this Plan.

j.     The entry of any order, including injunctions, necessary to enforce title, rights and powers of Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary including, without limitation, any right of Debtor to recover assets pursuant to any of the relevant provisions of the Bankruptcy Code.

k.     The determination of the validity, extent and priority of all liens and security interests against property of Debtor's Estate.

l.     To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary or desirable to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in this proceeding.

m.     Enforcement of any rights of Debtor arising out of bankruptcy laws or terms of the Plan.

n.     The adjudication of the Litigation Claims.

o.     The entry of an order concluding and terminating this Chapter 11 Case.

**14.2     Continued Jurisdiction over Adversary Cases.**     The Bankruptcy Court shall retain jurisdiction over any Adversary Case pending as of the Effective Date, whether or not the Bankruptcy Case has been closed or a final decree entered.

## ARTICLE XV

## TREATMENT OF DISPUTED CLAIMS

**15.1**     Except as otherwise provided for in this Plan, Debtor shall set aside in a segregated

21

account the percentage installments on payments applicable to Disputed Claims.

15.2    If Debtor and the Creditor holding a Disputed Claim are unable to agree on the amount to be placed in the segregated account, the Bankruptcy Court shall fix the amount, upon request of either party.

15.3    Upon Final Order of the Bankruptcy Court respect to the allowance or disallowance of a Disputed Claim:

a.    If any part of the Disputed Claim is finally allowed, Debtor shall distribute to such Claimant, from the segregated account, that portion of the amount held in the segregated account to which the Claimant would have been entitled if the Claim had been allowed as of the Confirmation Date, within ten (10) days of the date of the Final Order allowing such Claim.

b.    The balance of the funds in the segregated account attributable to the disallowed portion of the Disputed Claim shall be distributed to Debtor.

c.    If the funds in the segregated account attributable to the previously Disputed Claim are insufficient to pay the amounts required to be paid, Debtor shall pay the balance due within thirty (30) days the entry of the Final Order allowing such Claim.

d.    After allowance, and to the extent allowed, the previously Disputed Claim shall be treated for purposes of receiving subsequent distributions (if any), as if such Claim had been allowed as of the Confirmation Date.

## ARTICLE XVI

### POST-PETITION REPORTING

16.1    Debtor shall file post-petition reports as required by Local Rule 3020(a), with reports to be filed at least quarterly within 30 days of the prior calendar quarter, until entry of a final decree.

. . .

. . .

. . .

. . .

22

**16.2**  Debtor shall be eligible for a final decree upon (1) commencement of payments pursuant to the confirmed Plan; and (2) entry of a Final Order of Confirmation.

Respectfully submitted this 6th day of June, 2019.

DEBTOR, CREDIT MANAGEMENT ASSOCIATION, INC.
  /s/ Kimberly Lamberty
Kimberly Lamberty, President

23